UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| COACHMEN INDUSTRIES INC., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CAUSE NO. 3:06-CV-160 CAN |
| KEMLITE, | ) ) | |
| Defendant. | ) ) | |

**OPINION AND ORDER**

On July 12, 2007, Defendant Kemlite filed a motion to compel. On September 12, 2007, this Court held an in-court hearing on that motion. For the following reasons, Kemlite's motion is **DENIED**.

**I.   PROCEDURE**

On March 2, 2006, Plaintiffs Coachmen Industries Inc., *et al.*, (collectively "Coachmen") filed their complaint in this Court. Generally, Coachmen alleges Kemlite provided it with a defective material that Coachmen subsequently used in building parts of its recreation vehicles. As a result, Coachmen claims Kemlite breached a contract and warranties between the two parties.

On or about June 1, 2006, Coachmen entered into an agreement with National R.V., Inc. (NRV). NRV is also in the business of creating recreational vehicles. In that agreement, Coachmen and NRV agreed to exchange information with each other regarding their respective lawsuits against Kemlite. While NRV was not actually involved in litigation at the time the agreement was executed, on June 29, 2007, NRV initiated litigation against Kemlite in a

California federal district court. Both NRV's lawsuit in California and Coachmen's lawsuit here in Indiana involve contract and warranty issues regarding the same Kemlite product.

The current dispute in this Court is a discovery dispute between Coachmen and Kemlite. On July 12, 2007, Kemlite filed a motion to compel seeking dozens of email messages from Coachmen. Most, if not all, of the messages were communications between Coachmen and NRV representatives. On July 27, 2007, Coachmen filed its opposition to Kemlite's motion. Coachmen claims the communications that Kemlite seeks are protected from disclosure by the work product doctrine. On August 3, 2007, Kemlite filed its reply in support of its motion.

On September 12, 2007, this Court held an in-court hearing on Kemlite's motion to compel. After hearing arguments from counsel, this Court ordered Coachmen to create a supplemental privilege log. This Court also ordered the parties to attempt to resolve the dispute and allowed the parties to submit supplemental briefing.

On September 26, 2007, Kemlite filed its supplemental brief in support of its motion to compel. On October 3, 2007, Coachmen filed its supplemental brief in opposition to Kemlite's motion. The parties were able to resolve much of the discovery dispute and now only five email messages remain in dispute. This Court must determine whether the work product doctrine protects these five emails from disclosure.

## II. ANALYSIS

### A. Legal Standards

Fed. R. Civ. P. 26(b)(1) permits discovery into "any matter, not privileged, that is relevant to the claim or defense of any party." Relevant information need not be admissible at trial so long as the discovery appears reasonably calculated to lead to the discovery of admissible

2

evidence.  Fed. R. Civ. P. 26(b)(1).  For the purpose of discovery, relevancy will be construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." Chavez v. Daimler Chrysler, 206 F.R.D. 615, 619 (S.D. Ind. 2002) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351(1978)).

However, two well known exceptions to the liberal discovery rules are the attorney-client privilege and the work product doctrine.  See United States v. Frederick, 182 F.3d 496, 500 (7th Cir. 1999).  The work product doctrine is distinct and broader than the attorney-client privilege.  See BASF Aktiengesellschaft v. Reilly Industries, Inc., 224 F.R.D. 438, 440 (S.D. Ind. 2004).  The work product doctrine is codified in the Federal Rules under Fed. R. Civ. P. 26(b)(3).  See A.O. Smith Corp. v. Lewis, Overbeck & Furman, 1991 WL 192200 at *1 (N.D. Ill. 1991) (indicating work-product doctrine stems from Hickman v. Taylor, 329 U.S. 495 (1947) and is codified in Fed. R. Civ. P. 26(b)(3)).  Fed. R. Civ. P. 26(b)(3) states:

> . . . a party may obtain discovery of documents and tangible things otherwise discoverable . . . and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the . . . materials by other means. . . . [T]he court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.[1]

---

[1]This Court notes that federal law governs the scope and application of the work product doctrine.  Both the attorney-client privilege and work product doctrine are often associated together, but the law this Court applies varies when jurisdiction is based on diversity.  The work product doctrine has been codified in the Federal Rules of Civil Procedure, and as a result, this Court applies federal case law regarding interpretation of this doctrine.  See Country Life Ins. Co. v. St. Paul Surplus Lines Ins. Co., 2005 WL 3690565 at *5 (C.D. Ill. 2005).  The attorney-client privilege, on the other hand, remains a common law doctrine, and thus, F.R.E. 501 commands this Court to apply state law when jurisdiction is based solely on diversity.  See Doe v. Oberweis Dairy, 2004 WL 1146712 at *2 (N.D. Ill. 2004).

3

The discovery opponent bears the burden of establishing the existence of the work product doctrine to prevent discovery.  Allen v. Chi. Transit Auth., 198 F.R.D. 495, 499 (N.D. Ill. 2001).

    B.    Kemlite's Motion to Compel

Kemlite seeks to compel Coachmen to produce five emails, all of which were created by NRV, not Coachmen.  Coachmen claims that the work product doctrine protects these emails from disclosure even though Coachmen's attorneys did not create the emails.  The first question that must be addressed is whether the emails are actually work product.

    1.    Valid Work Product

In order to be considered "work product," the materials must have been prepared in anticipation of litigation or trial.  BASF, 224 F.R.D. at 441.  A court is to ask, "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." Caremark, Inc. v. Affiliated Computer Serv.s, Inc., 195 F.R.D. 610, 614 (N.D. Ill. 2000) (citing Binks Mfg. Co. v. Nat'l Presto Indus., Inc., 709 F.2d 1109, 118-19 (7th Cir. 1983)).

The first email was created by Cheri Endsley, the executive legal secretary for NRV.[2]  Coachmen indicates that several high ranking NRV officials participated in a meeting with four attorneys.  One of the attorneys was Coachmen's counsel.  Coachmen's counsel represents that the email is essentially a set of minutes of that meeting and basically memorializes the discussion regarding litigation strategy.  There is no question that this email is work product.  The meeting between NRV counsel and representatives and Coachmen's counsel occurred to

---

[2]While a legal secretary is not counsel, items prepared by agents of attorneys are within the protection of the work product doctrine.  United States v. Nobles, 422 U.S. 225 (1975).

4

discuss legal theories or opinions regarding the lawsuits against Kemlite.  The meeting took place because of the prospect that the litigation would continue.  The minutes of that meeting were written down for the same reason.  Clearly, this document is work product.

The second and third documents are email messages between NRV's general counsel and Coachmen's counsel regarding the exchange of expert witness information.  The email discusses possible experts that either party may or may not have retained.  The parties discussed legal opinions regarding experts, or possible experts, because of the prospect that the litigation they were engaged in would continue.  Consequently, these documents are also valid work product.

The final two email messages concern litigation strategy and draft memorandums by NRV regarding the present motion to compel.  The attached emails were prepared in anticipation of a discovery dispute in this litigation.  These documents are also valid work product.

Finally, all of these emails, other than being prepared in anticipation of litigation or a phase of litigation, contain mental impressions of counsel, either from NRV or Coachmen.  Simply and summarily put, all of the emails are unquestionably attorney work product.

        2.     Waiver and Standing

In order to maintain the character of work product when sharing it with a third party, the party that has created the work product must demonstrate that there has not been a "waiver" of the work product immunity.  Typically, the most common instance of waiver is when protected information is disclosed to a third party.  See Beneficial Franchise Co. v. Bankon, N.A., 205 F.R.D. 212, 215 (N.D. Ill. 2001).  The party that created the work product must then establish either that 1) it has not substantially increased the likelihood that an adversary would obtain the

information **or** 2) that the third party shares a "common interest" with it.  BASF, 224 F.R.D. at 442.

However, in the present motion, the generating party, NRV, is not claiming that its product is protected by the work product doctrine.  Instead, this Court is dealing with the opposite situation.  The third party to whom the items were disclosed, Coachmen, is essentially arguing that the generating party, NRV, did not waive the work product protection.  Consequently, Kemlite argues that Coachmen has no standing to claim that the work product doctrine protects the emails from disclosure because they are NRV's work product and not Coachmen's.

This Court is not aware of any authority regarding the issue of standing in relation to the work product doctrine.  However, this Court finds that if the third party, Coachmen, can establish that it and the generating party, NRV, have a "common interest," and that they intended to protect each others work product, Coachmen may assert the work product protection.  Or put differently, if the two parties have a "common interest" they function as one, and the protection one party has extends to the other.  This is consistent with the purpose of the work product doctrine.  If two parties are essentially allies in litigation, disclosure of the mental impressions or legal conclusions of either party to a common adversary would grant that adversary an unfair advantage.  Consequently, for Coachmen to be able to claim the protection of the work product doctrine, Coachmen must establish that it and NRV have a common interest and that the two have agreed to keep their work product confidential.

        3.        <u>Common Interest Privilege</u>

The common interest doctrine is not an independent source of confidentiality, but rather it simply extends the protection afforded by other privileges or doctrines. <u>See</u> <u>United States v. Evans</u>, 113 F.3d 1457, 1467 (7th Cir. 1997); <u>BASF</u>, 224 F.R.D. at 440; <u>Griffith v. Davis</u>, 161 F.R.D. 687, 692 (C.D. Cal. 1995). Several district courts in the 7th Circuit have recognized that the "common interest" privilege applies to the work product doctrine. <u>See</u> <u>Reed v. Advocate Health Care</u>, 2007 WL 2225901 at *2 (N.D. Ill. 2007); <u>Reginald Martin Agency, Inc. v. Conseco Medical Ins. Co.</u>, 460 F. Supp. 2d 915, 918 (S.D. Ind. 2006); <u>BASF</u> 224 F.R.D. at 440; <u>IBJ Whitehall Bank & Trust Co. v. Cory & Assoc.s, Inc.</u>, 1999 WL 617842 at *4 (N.D. Ill. 1999). As a result, this Court will follow the lead of other district courts and find that the common interest privilege may extend the protection of the work product doctrine.

However, what constitutes a common interest with regards to the work product doctrine is not settled law. Some Courts have indicated that those invoking the privilege must have a "manifested common interest in litigation . . . and not merely a common business interest." <u>See e.g.</u> <u>Trading Tech.s, Inc. v. eSpeed, Inc.</u>, 2007 WL 1302765 at *1 (N.D. Ill. 2007) (citations omitted). However, this statement provides little guidance. Clearly, there are circumstances when it is obvious that a common interest exists, such as when two parties are involved in the same lawsuit against a common opponent. <u>See</u> <u>United States v. McPartlin</u>, 595 F.2d 1321, 1336 (7th Cir. 1979). However, most situations, like the current one, are not as clear cut.

This Court finds that the better approach to determine whether there is a common interest is to evaluate the totality of the circumstances between the parties. A non-exhaustive list of factors this Court will consider are: 1) whether the interest is actually a legal interest, 2) whether

7

the parties are or anticipate being engaged in litigation 3) against a common adversary, 4) regarding the same or similar issues; 5) whether the parties have expressed intent to cooperate, such as by a written agreement; 6) whether the parties have the same legal counsel; and 7) whether it is in the interests of justice and fairness to preventing disclosure of the information. Cf. Estate of Williams v. Iowa Pipeline Assoc.s, Inc., 244 F.R.D. 498, 500 (S.D. Ind. 2007) (indicating that when same attorney represents two parties, communications protected in attorney-client privilege context); Country Life Ins. Co. v. St. Paul Surplus Lines Ins. Co., 2005 WL 3690565 at *7 (C.D. Ill. 2005) (indicating a written agreement shows an expressed intent to cooperate in the attorney-client privilege context); Allendale Mut. Ins. Co. v. Bull Data Systems, Inc., 152 F.R.D. 132, 141 (N.D. Ill. 1993) (interest asserted must be a legal interest rather than a business interest).

 In the present case, NRV and Coachmen are both currently engaged in separate litigation with the same adversary, Kemlite. Both NRV and Coachmen have the same, or very similar, legal claims based on contract and warranty theories regarding the same Kemlite product. Further, both NRV and Coachmen are involved in the same business and have the same business relationship with Kemlite. The parties also have a written agreement that indicated the parties would exchange privileged information to further their legal efforts. While the agreement is not dispositve of establishing that the parties have a common interest, it is very strong evidence that the parties intended to cooperate. And finally, it is in the interests of justice and fairness to find the parties have a common interest. The purpose of the work product doctrine exists to prevent one party from gaining an unfair advantage over another party by learning the strategies and legal theories of the other party. Minn. Sch. Brd.s Ass'n Ins. Trust v. Employers Ins. Co.

Wausau, 183 F.R.D. 627, 630 (N.D. Ill. 1999). Allowing Kemlite to have the documents they request would run contrary to this purpose. Coachmen has represented that the documents containing nothing but legal conclusions, theories, and strategy. Kemlite has offered nothing but speculation that these documents contain anything else. Because Coachmen and NRV are involved in nearly identical cases against Kemlite, allowing Kemlite to view the strategies or legal theories of either Coachmen or NRV would give Kemlite an unfair advantage. Consequently, this Court finds that NRV and Coachmen have a common interest. Having previously found the five e-mails were attorney work product and now concluding that NRV and Coachmen have a common interest each may rightfully claim the e-mails as work product and are therefore not subject to discovery by Kemlite.[3]

### III. CONCLUSION

In summary, this Court finds that the emails in question are valid work product. Further, this Court finds that NRV and Coachmen share a common interest. Consequently, Coachmen may claim protection of the work product doctrine even though NRV created the work product. Kemlite's motion to compel is **DENIED** [Doc. No. 71]. Each party shall be responsible for its costs.

**SO ORDERED.**

Dated this 2nd Day of November, 2007.

s/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge

---

[3] Kemlite still might be entitled to the materials they seek if they can show a substantial need for the information or undue hardship. However, Kemlite has not articulated either a substantial need or undue hardship.